IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JAMES CARROLL and ELEANOR CARROLL, on behalf of themselves and all others similarly situated, )<br><br>*Plaintiffs*, )<br><br>v. )<br><br>UNITED COMPUCRED COLLECTIONS, INC. and A.B. STINEMAN, )<br><br>*Defendants*. ) | No.  1:99-00152<br>Judge Nixon<br>Magistrate Judge Griffin |

## <u>MEMORANDUM ORDER</u>

Pending before the Court is Plaintiffs' Motion for An Award of Costs and Attorney Fees ("Plaintiffs' Motion") (Doc. No. 135). Defendants have filed a Response in opposition (Doc. No. 135), and Plaintiffs thereafter submitted a Reply (Doc No. 144).[1] For reasons discussed herein, Plaintiffs' Motion is **GRANTED.**

**I.    BACKGROUND**

**A.    Litigation on the Merits**

Plaintiffs James Carroll and Eleanor Carroll filed a putative class action complaint on September 17, 1999 against Defendants United Compucred Collections, Inc. ("United Compucred") and A.B. Stineman (collectively, "Defendants") alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Doc. No. 1). On

---

[1] Parties subsequently filed supporting memoranda highlighting recent case law, which the Court has considered. <u>See</u> (Doc. Nos. 149, 150).

-1-

December 15, 1999, Defendants served Plaintiffs with an offer of judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 68, offering $1000.00 to each Plaintiff and $1000.00 in attorney's fees.[2] (Doc. No. 7). Plaintiffs did not accept this offer. See (Doc. Nos. 9, 144)

Over the subsequent months, the parties engaged in the typical course of pretrial motions, including a Motion for Class Certification by Plaintiffs (Doc. No. 25), and Motions for Summary Judgment filed by both parties (Doc. Nos. 39, 43). On November 14, 2002, Magistrate Judge Griffin issued a Report and Recommendation that: (1) Defendants' motion for summary judgment be denied; (2) Plaintiffs motion for partial summary judgment be granted in part, specifically that judgment in favor of Plaintiffs should be awarded on the claim that United Compucred violated the FDCPA; and (3) that Plaintiffs' motion for class certification be granted. (Doc. No. 58).

On or about January 21, 2003, Defendants served Plaintiffs with a second Rule 68 offer of judgment, offering $1,100 each to James and Eleanor Carroll and $10,000 to the approximately 164 class members subject to this Court's certification of the class and approval of the amount. The second offer of judgment also provided that, upon the Court's determination, the action could proceed as a class action and attorney fees would be awarded to Plaintiffs. (Doc.

---

[2] Rule 68 states in relevant part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . . An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.

FED. R. CIV. P. 68.

Nos. 75, 76).

Before this Court ruled on whether or not to adopt the Magistrate Judge's Report and Recommendation, Plaintiffs filed a notice on January 31, 2003 that they intended to accept Defendants' second offer of judgment. (Doc. No. 76).

On April 1, 2003, this Court adopted the Magistrate Judge's recommendation on class certification, acknowledged Defendants' offer of $10,000.00 to class members, and ordered the parties to submit a joint proposed notice to the class regarding the litigation, the opportunity to opt out, and the settlement reached by the parties. (Doc. No. 90). Subsequently, Defendants sought appellate review of the issue of class certification. (Doc. No. 97). The Sixth Circuit granted Defendants permission for an interlocutory appeal (id.), and on April 4, 2005, affirmed this Court's decision to certify the class and remanded the case for further proceedings (Doc. No. 110).

Nine (9) months after the case was remanded, Defendants attempted to challenge the class certification once more with a Motion to Vacate this Court's prior Order granting class certification. (Doc. No.114). Defendants' Motion to Vacate was denied on March 29, 2006. (Doc. No. 120).

In May 2006, the parties filed the proposed notice to be sent to members of the class informing them of the litigation and the Defendants' offer of judgment. (Doc. No. 123). The notice informed class members that upon the Court's approval of the offer of judgment after conducting a final fairness hearing, judgment in the amount of $10,000.00 would be entered in favor of the class members against Defendants, entitling each member to receive $53.19 from the proceeds unless they opted out of the class. (Doc. No. 123-2).

-3-

After holding the final fairness hearing, this Court entered a final judgment against Defendants and approved Defendants' second Offer of Judgment to class members in the sum of $10,000.00 with directions that $53.19 be paid to each class member that could be located with the remainder to be awarded as a *cy pres* benefit to the Legal Aid Society of Middle Tennessee and the Cumberlands. (Doc. Nos. 128, 134). Plaintiffs were furthermore directed to submit their application for attorney's fees and costs. (Doc. No. 134).

### B. Attorney's Fees

In their instant Motion, Plaintiffs seek attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54(d) and the FDCPA, 15 U.S.C. §§ 1692k(a)(3), for work completed over the nearly seven (7) years of litigation on this matter. During the course of this action, four (4) attorneys represented Plaintiffs: A. DeLoach Stewart ("Mr. Stewart") acted as James and Eleanor Carroll's personal attorney, Steven Taterka ("Mr. Taterka") served as local counsel in the action, O. Randolph Bragg ("Mr. Bragg"), an attorney from Chicago, Illinois, acted as lead counsel handling the class certification and the merits of the suit, and David Searles ("Mr. Searles"), an attorney from Philadelphia, Pennsylvania, worked on the interlocutory appeal on the class certification issue.

Plaintiffs' counsels' fee request is as follows:

|  | **(Hourly Rate x Hours Expended) = Total** | | |
|---|---|---|---|
| **Mr. Stewart** | $180 x 19.1 | = | $3438.00 |
| **Mr. Stewart's partner** | $180 x 0.3 | = | $54.00 |
| **Mr. Taterka** | $300 x 57.5 | = | $17,250.00 |
| **Mr. Bragg** | $450 x 217.2 | = | $97,740.00 |

-4-

| | | |
|---|---|---|
| **Mr. Bragg's associate attorney** | $175 x 1.8 = | $315.00 |
| **Mr. Bragg's law students/clerks** | $110 x 24.2  = | $2,662.00 |
| **Mr. Bragg's paralegal** | $100 x 0.9 = | $90.00 |
| **Mr. Searles** | $500 x 12.7  = | $6350.00 |
| **Mr. Searles' paralegal** | $135 x 1.8 = | $243.00 |

In total, the attorney fees sought by Plaintiffs for work done in the course of litigation come to $128,142.00. (Doc. No. 136). Additionally, Mr. Bragg seeks $3,147.01 in legal costs and expenses related to the litigation. (Id.).

Mr. Bragg also filed in a separate declaration a request for fees and costs related to time expended preparing the analysis of attorney fees and costs, or "fees on fees" in the amount of $12,377.21: $8,055.00 ($450/hour x 17.9 hours) for Bragg's services, $3,255.00 ($175/hour x 1.8 hours) for his associate, $30.00 ($100.00/hour x 0.3) for Bragg's paralegal's services, and $1,037.21 in expenses. (Doc. No. 145). Thus, the full amount Plaintiffs seek from Defendants in attorney fees and litigation expenses and costs is $143,666.22.

## II.     ANALYSIS

Under the FDCPA, debt collectors who have violated its provisions are liable for any actual damages sustained, statutory damages, and "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a). Courts have uniformly read this provision to mean that an award of attorneys' fees and costs is mandatory in such cases. See, e.g., Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008); Sanders v. Jackson, 209 F.3d 998, 1003 (7th Cir. 2000); Lee v. Thomas & Thomas, 109 F.3d

302, 306 (6th Cir. 1997).

The overarching goal when determining attorney's fees is to reach a reasonable amount, "one that is adequate to attract competent counsel, but [does] not produce windfalls to attorneys. Blum v. Stenson, 465 U.S. 886, 893 (1984). To determine the amount of a reasonable fee, courts begin by establishing a "lodestar" – that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); accord Lee, 109 F.3d at 306 (noting with approval the application of Hensley to determine attorney's fees under FDCPA). A reasonable hourly rate typically includes an assessment of the prevailing market rate in the relevant community, which the Sixth Circuit defines as the "rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Adcock-Ladd v. Secy. of Treasury, 277 F.3d 343, 350 (6th Cir. 2000). When attorney's fees are sought by out of town counsel, courts must inquire "(1) whether hiring the out-of-town specialist was reasonable in the first instance; and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation. Hadix v. Johnson, 65 F.3d 532, 534 (6th Cir. 1995).

The lodestar determination does not end the fee inquiry, as other factors may lead a court to adjust the fee upward or downward. Id. at 434. Such factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services; (4) preclusion of other work; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by either the client or the circumstances; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation and abilities; (10) the undesirability of the case; (11) the nature and length of relationship between attorney and client;

and (12) awards in similar cases. Id. at 430.

### A. Attorney's Fees and Costs for Litigation

The parties are in agreement that some amount of attorney's fees are due to Plaintiffs. Defendants, moreover, do not contest Plaintiffs' proffered hourly rates or time expended on the litigation (Doc. No.143, n.4), but instead argue more broadly that Plaintiff's bottom line is not reasonable as compared to the amount paid in statutory damages and should be heavily reduced. (Doc. No. 143). The Court, therefore, begins its analysis with a determination of the lodestar amount.

#### *1. Lodestar method of calculation*

On review of Plaintiffs' application for attorney's fees, the Court notes that the relevant market for the determination of a reasonable hourly rate is where the Court sits – Nashville, Tennessee. Plaintiffs demonstrate through declarations submitted by Mr. Stewart and Mr. Takerta that the hourly rates requested by Mr. Stewart ($180.00/hour), Mr. Stewart's partner ($180.00/hour), and Mr. Takerta ($300.00/hour) are reasonable rates in the market given their individual experience levels. With regard to Plaintiffs' out-of-town experts, Mr. Searles and Mr. Bragg, Plaintiffs aver that there were no local attorneys with the resources, expertise, or willingness to litigate this FDCPA class action. See (Doc. No. 136). Indeed, it is apparent from the sworn declarations filed by both attorneys that Mr. Searles and Mr. Bragg are routinely hired to litigate FDCPA class action matters across the country. Mr. Searles and Mr. Bragg also list several case citations in their declarations to show that their requested hourly rates in this case have been determined to be reasonable by other courts. (Doc. Nos. 139, 140). This Court finds no reason to disagree.

Reviewing the hours expended on the litigation, the Court also finds that the attorneys' time is supported by detailed descriptions of the attorneys' effort, and appear to this Court to be time reasonably expended in the matter. Thus, the Court concludes that the reasonable lodestar amount in attorney's fees is Plaintiffs' requested amount of $128,142.00.

### 2.     *Reduction of award*

Defendants assert that reduction is necessary, as Plaintiffs' limited level of "success" in obtaining $1,110.00 for each named Plaintiff and less than $60.00 per class member does not warrant the amount in fees requested by their attorneys. Specifically, Defendants point to Lee v. Thomas & Thomas, 109 F.3d 302 (6th Cir. 1997), in support of the suggestion that a reasonable fee may be reached if Plaintiffs' attorney's fees are capped at the time when Defendants gave Plaintiffs a Rule 68 offer of judgment – approximately December 31, 1999, or at the very latest by the time the second offer of judgment was accepted, February 13, 2003 – as any work performed thereafter by Plaintiffs' attorneys was wholly "unnecessary and inappropriate." (Doc. No. 143).

In Lee, the defendant served the plaintiff's counsel with a Rule 68 offer of judgment for $2000.00 soon after litigation commenced – an amount that, if accepted, would have provided the plaintiff with the statutory maximum recovery of $1200.00 leaving $800.00 for attorney's fees and court costs.[3] The offer was rejected, and the parties filed several more pleadings and commenced with discovery. The defendants served a second offer of judgment a few months

---

[3] Under the FDCPA, the maximum amount that an individual can recover for statutory damages is $1000.00. 15 U.S.C. 1692k(a)(2)(A). The plaintiff in Lee also sought statutory damages under an Ohio statute that sets the maximum recovery for statutory damages at $200.00. Id. at 304.

-8-

Case 1:99-cv-00152   Document 152   Filed 07/31/08   Page 8 of 12 PageID #: 386

later, this time offering $1200.00 to the plaintiff in addition to court approved attorney's fees and costs. Thus, the only practical difference between the defendant's first and second offer was the potential increase in attorney's fees. The defendant's second offer was accepted by the plaintiff. When reviewing the plaintiff's application for attorney's fees and costs, which totaled $12,759.00, the magistrate judge determined that the plaintiff's attorney's expenditure of time after the first offer of judgment constituted "economic waste," and therefore allowed no recovery for the hours charged after that date. The Sixth Circuit affirmed the magistrate judge's decision, observing that the plaintiff's attorney "evidently wanted a larger fee than a $2000 judgment would have yielded him," and should not recover more beyond the reasonable fees included in the original offer of judgment.[4] 109 F.3d at 303-04.

Apart from the fact that Defendants in the instant case served more than one Rule 68 offers of judgment during the course of litigation, the present matter bears little resemblance to Lee such that a strict cap should be imposed when determining attorney's fees. There is no evidence on the record that would indicate Plaintiffs' attorneys rejected the first offer of judgment solely in the hope of obtaining higher fees and costs, with no additional benefit to their clients. Rather, Defendants' second offer of judgment was significantly more favorable to Plaintiffs, as it gave them a larger amount in damages and offered relief to the putative class. Under the facts of this case, the Court cannot conclude that Plaintiffs' attorney's work performed

---

[4] Undoubtedly, the decisions of the magistrate judge and the Sixth Circuit were also influenced by the plaintiff's counsel's highly aggressive and ethically questionable tactics throughout litigation, beginning with a letter to the defendants seeking $2000.00 to refrain from filing the lawsuit. See 109 F.3d at 303. Lee's attorney's offers to settle continued to rise to $4000.00 and then $5000.00. Id. at 304. Undisputed evidence also indicates that Lee's attorney freely admitted to opposing counsel that attorney's fees were "the engine which was powering the case." Id.

-9-

after December 31, 1999 was unnecessary or "economic waste."

Nor does the Court find it appropriate to cap fees around the time of Defendants' second offer of judgment. To do so would ignore the fact that the overwhelming majority of the litigation effort that took place after Defendants' second offer of judgment resulted from their own dogged persistence in defending against class certification, despite stating in the final offer of judgment that this Court could very well certify the class. It is readily apparent that though Plaintiffs accepted the second offer of judgment in early 2003, the matter was protracted because Defendants took an offensive stance in this matter and drove the course and pace of litigation – filing objections to the Magistrate Judge's Report and Recommendation, unsuccessfully appealing the issue to the Sixth Circuit, and making a final attempt to vacate this Court's decision on remand – leaving Plaintiffs with no choice but to respond to each motion. While Defendants were certainly entitled to utilize the federal courts system to the fullest in order to protect their interest, the Court finds it inappropriate to deny Plaintiffs the fees incurred while responding to Defendants' aggressive litigation tactics.

Defendants' generalized argument that the six-figure amount in fees is not reasonable when compared to the results obtained – $12,200 in statutory damages – is equally unconvincing. As Plaintiffs correctly assert, "attorney's fees are not limited by the amount of [Plaintiffs'] recovery." Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 802 (6th Cir. 1996). The Court additionally notes that Plaintiffs in this case were highly successful, prevailing on their motion for partial summary judgment, obtaining class certification, fulfilling a significant purpose behind the FDCPA by acting as "private attorneys general" and obtaining recovery for class members, and receiving monetary judgment for themselves above the statutory maximum

as provided in the FDCPA. See Camacho, 523 F.3d at 978; Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995). Furthermore, when $128,142.00 in attorney's fees is viewed in light of the fact that this amount was incurred over seven (7) years by Plaintiffs' counsel while they worked to obtain the total amount of damages for the class, the amount cannot be said to be unreasonable. Thus, the Court finds no reason to adjust the lodestar amount either upward or downward.

### B. Costs

Only one of Plaintiffs' attorneys, Mr. Bragg, seeks recovery costs associated to this litigation. Defendants specifically do not contest the costs sought by Mr. Bragg, which total $3,147.01. On its own review, the Court finds Mr. Bragg's costs to be well-supported and reasonable, and therefore grants the full amount.

### C. "Fees on fees"

Finally, the Court reaches Mr. Bragg's supplemental request of $12,377.21 for the work and costs incurred after August 2006 in connection to preparing the instant motion. Defendants have not addressed Mr. Bragg's additional request. (Doc. No. 145). To determine the appropriate amount of "fees on fees," the Court must begin the calculation by using the lodestar approach. Camacho, 523 F.3d at 982. The Court has already found the proposed rates for Mr. Bragg and his staff to be reasonable. See supra. In reviewing the time entries supplied by Mr. Bragg, the Court also finds the hours expended to be reasonable and well supported. Accordingly, the lodestar calculation for the additional fees is as follows: $8,055.00 ($450/hour x 17.9 hours) for Bragg's services, $3,255.00 ($175/hour x 1.8 hours) for his associate, $30.00 ($100.00/hour x 0.3) for Bragg's paralegal's services, arriving at a total of $11,340.00.

The Court, however, finds this amount of fees on fees extraordinarily high given the circumstances. Mr. Bragg, according to his own declaration, is no stranger to the pursuit of attorney's fees in connection with FDCPA matters; he is undoubtedly quite familiar with the law on attorney's fees and the process through which to collect awards, which should reduce the amount of time spent in preparing any motion for attorneys fees. Moreover, collecting billing data, preparing declarations, and updating legal memoranda with more recent and binding case law are not complicated or novel tasks that require the expertise of a seasoned attorney. The Court, therefore, finds it appropriate to reduce the lodestar amount of $11,340.00 by 60% to reach a total of $4536.00. As for the costs incurred by Mr. Bragg after August 2006, the Court finds the amount to be reasonable and awards the full amount of $1,037.21.

### III. CONCLUSION

Plaintiffs' Motion is hereby **GRANTED**. Plaintiffs' counsel are entitled to $128,142.00 in fees and $3,147.01 in costs incurred over the course of litigation on the case's merits, as well as $4,536.00 in fees and $1,037.21 in costs incurred after August 2006 in efforts to obtain attorney's fees. Therefore, the Court **ORDERS** Defendants to pay to Plaintiffs a total of $136,862.22 in attorney's fees and costs.

It is so ORDERED.

Entered this the 31st day of July, 2008.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-12-

Case 1:99-cv-00152   Document 152   Filed 07/31/08   Page 12 of 12 PageID #: 390